45 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 CENTRAL STATES UNDERWATER CONTRACTING, INCORPORATED, a
Kansas Corporation, Plaintiff-Appellant,
v.
R. L. MORRISON & SONS, INCORPORATED, a South Carolina
Corporation, Defendant-Appellee.
 No. 94-1133.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 7, 1994.
Decided: Jan. 26, 1995.
 
 ARGUED: Douglas Herring Westbrook, Charleston, SC, for Appellant. Robert Gilmour McIver, Patton, Boggs & Blow, Greensboro, NC; Michael Stanley Seekings, Robertson & Seekings, Charleston, SC, for Appellee. ON BRIEF: Donna L. Price, Tacoma, WA, for Appellant.
 Before WILKINS and WILLIAMS, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Central States Underwater Contracting, Incorporated (Central States) appeals from a decision of the district court granting summary judgment to R. L. Morrison & Sons, Incorporated (Morrison & Sons) on the basis that Central States' claim is barred by the existence of a previous action between these parties in state court. We reverse.
 
 I.
 
 2
 Viewed in the light most favorable to Central States, the facts are as follows. Central States installs and inspects underwater pipelines. In 1989, Donald Doleshal, Central States' President, invented a new system for digging pipeline trenches known as the Underwater Trenching System (UTS). Shortly thereafter, Central States contracted to install a natural gas pipeline across the Stono River in Charleston County, South Carolina. Doleshal had a prototype of the UTS built for use on the Stono River project.
 
 
 3
 In August 1989, Central States leased a barge and tugboat from Morrison & Sons from which to stage operations for the Stono River project. When the project was completed in November 1989, all of Central States' equipment, including the UTS, was transported to Morrison & Sons' property. Doleshal returned for Central States' equipment in December; however, the trailer he had rented for this purpose was not large enough to accommodate the UTS. Mike Morrison, Morrison & Sons' Vice-President, agreed to store the UTS on Morrison & Sons' property until Central States could retrieve it.
 
 
 4
 After Central States failed to pay the $31,000 it owed under the barge and tugboat lease agreement, Morrison & Sons filed suit in state court. On August 2, 1990, Central States' attorney wrote to counsel for Morrison & Sons, proposing settlement and enclosing a check for $10,000. The letter also indicated that Central States planned to retrieve the remainder of its equipment from Morrison & Sons' property in the near future. Morrison & Sons accepted the proposed settlement, contingent on clearance of the check, by letter dated August 9, 1990. This letter also advised Central States that "[t]he few pieces of equipment that were left [on Morrison & Sons' property] have been junked." Central States' Vice-President confirmed in a telephone conversation with Morrison that the UTS had been dismantled and sold for scrap. Thereafter, Doleshal visited Morrison & Sons' property on August 18th and verified that the UTS was no longer there. The parties agree that Morrison & Sons had dismantled the UTS and sold it for scrap sometime between April and June 1990 without prior notice to Central States. On September 11, 1990, Morrison & Sons voluntarily dismissed its suit against Central States.
 
 
 5
 Central States subsequently filed this action in December 1992, claiming breach of bailment, negligence, and conversion arising from the destruction of the UTS. Morrison & Sons moved for summary judgment, asserting that the claim was barred by the previous state-court action. The district court agreed, concluding that the subject matter of the two suits was "virtually identical" because "[t]he prior litigation involved [Central States'] non-payment of the rental fees owed to [Morrison & Sons] for [Central States'] use of [Morrison & Sons'] vessel during the construction in which the [UTS] was used." The court therefore concluded that Central States' claim was barred by res judicata.
 
 II.
 A.
 
 6
 Central States first asserts that its claim is not barred by res judicata because there is no identity of subject matter between this action and the previous one. Under South Carolina law, res judicata applies when "(1) there is an identity of the parties or their privies, (2) there is an identity of the subject matter of the litigation, and (3) there was a final determination on the merits of the claim in the prior action." Gathings v. Robertson Brokerage Co., 367 S.E.2d 423, 426 (S.C. Ct.App.1988). The doctrine bars litigation of any issues that were actually adjudicated, as well as any issues that might have been litigated, in a former suit. Hilton Head Ctr. of S.C., Inc. v. Public Serv. Comm'n of S.C., 362 S.E.2d 176, 177 (S.C.1987).
 
 
 7
 We conclude that Central States' claim is not barred by res judicata because there is no identity of subject matter. While the subject matter of the prior action between Central States and Morrison & Sons was the lease agreement for Morrison & Sons' equipment, the subject matter of the present action is an alleged bailment of Central States' property. Although the alleged bailment was created at the completion of the lease agreement, the bailment was not related to the lease agreement itself.*
 
 B.
 
 8
 Central States also argues that the district court erred in concluding that the claim for damages due to the destruction of the UTS was a compulsory counterclaim within the meaning of South Carolina Rule of Civil Procedure 13(a) and therefore was barred. See Dow Chemical Co. v. Metlon Corp., 281 F.2d 292, 297 (4th Cir.1960) (failure to assert compulsory counterclaim results in waiver of the claim). Rule 13(a) provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." S.C. R. Civ. P. 13(a). Under South Carolina law, two claims arise from the same transaction or occurrence if there is a "logical relationship" between them. North Carolina Fed. Sav. & Loan Ass'n v. DAV Corp., 381 S.E.2d 903, 905 (S.C.1989); see Sue & Sam Mfg. Co. v. B-L-S Constr. Co., 538 F.2d 1048, 1053 (4th Cir.1976) (listing factors to be used in applying logical relationship test).
 
 
 9
 Central States' claim clearly is not a compulsory counterclaim because the facts and issues related to each claim are wholly different. The facts relevant to Morrison & Sons' claim were that Central States had entered the agreement, that Morrison & Sons had fully performed, and that Central States had failed to perform by paying for the lease of the barge and tugboat. In the present action, the relevant facts are Central States' ownership of the UTS, delivery of the UTS to Morrison & Sons, and Morrison & Sons' destruction of the UTS. Central States' claim is not logically related to Morrison & Sons' previous claim, and therefore is not a compulsory counterclaim.
 
 III.
 
 10
 Central States' present action for breach of bailment, negligence, and conversion is insufficiently related to Morrison & Sons' previous action for breach of a lease agreement to be barred by res judicata or to be considered a compulsory counterclaim. Accordingly, we reverse the decision of the district court and remand for further proceedings.
 
 REVERSED AND REMANDED
 
 
 *
 Morrison & Sons claimed at oral argument that the lease contained an implied bailment agreement for the UTS. Nothing in the one-page agreement, however, indicates that Morrison & Sons had any obligation whatsoever to protect Central States' equipment. Moreover, even if Morrison & Sons were obligated to care for the UTS during the lease term, there can be no question that the lease had expired by the time Morrison agreed to store the UTS for Central States. Accordingly, we reject Morrison & Sons' theory that the lease agreement created an implied bailment as unsupported by the record